Filed 1/26/23  In re Baby Boy E. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Baby Boy E., a Person Coming Under the Juvenile Court Law. | B313350 (Los Angeles County Super. Ct. No. 18CCJP05378B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.E.,<br><br>Defendant and Appellant. | ORDER MODIFYING OPINION<br><br>[No change in judgment] |

BY THE COURT:

It is ordered that the opinion filed herein on January 13, 2023, is modified as follows:

On page 15, changing the Disposition to read:

"The jurisdiction order is affirmed. The removal order is reversed, and the matter is remanded to the juvenile court to enter a new disposition order giving custody of the child to mother—unless the juvenile court makes a finding on the record, based on evidence not before this court in this appeal, that changed circumstances render the issue moot or would justify a detriment finding by clear and convincing evidence."

Respondent's alternative request for rehearing is denied.

There is no change in judgment.

_____

BAKER, Acting P. J.          MOOR, J.          KIM, J.

2

Filed 1/13/23  In re Baby Boy E. CA2/5 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Baby Boy E., a Person Coming Under the Juvenile Court Law. | B313350 (Los Angeles County Super. Ct. No. 18CCJP05378B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> S.E., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Linda Sun, Judge.  Affirmed in part and reversed in part.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## I.  INTRODUCTION

S.E., mother of now nearly two-year-old Baby Boy E. (the child),[1] appeals from the juvenile court's jurisdiction and disposition orders.  We affirm the jurisdiction order and reverse the removal order.

## II.  BACKGROUND

On February 25, 2021, the Department filed a section 300 petition that alleged, as later sustained under subdivision (b), the child tested positive at birth for marijuana; mother had a history of substance abuse including methamphetamine, heroin, and marijuana; mother currently was abusing marijuana and had abused marijuana during her pregnancy with the child; and mother had abused marijuana during her pregnancy with the

---

[1]  In its Welfare and Institutions Code section 300 petition (all further statutory references are to the Welfare and Institutions Code), the Los Angeles County Department of Children and Family Services (Department) identified the child as "Baby Boy E."  The Department subsequently identified the child as "M.E."

2

child's then two year old half-sibling S.E. who was a juvenile court dependent and receiving permanent placement services due to mother's substance abuse.[2]

In its March 2, 2021, Detention Report, the Department reported it received a referral stating the child had tested positive at birth for THC.[3] According to the referral, mother admitted smoking THC for the prior two years, but stated she stopped when she learned she was three months pregnant. The referral stated there was poor prenatal care, but mother had a stable living environment and family support, and mother was appropriately bonding with the child. According to mother, the child's father[4] was not involved, and she had supplies for the child and knew how to enroll in "WIC."

On three occasions in January 2021, a social worker attempted to contact mother at the address reported in the referral and was told by the residents that mother did not live there. On the third attempt, on January 27, 2021, the social worker called mother's reported telephone number while standing outside mother's referral address. The person who answered identified herself as mother. The social worker asked mother to provide her address. Mother provided the referral

---

[2]  On January 30, 2020, the juvenile court terminated family reunification services for mother as to half-sibling S.E. The court ordered adoption as the permanent plan. As of March 26, 2021, the section 366.26 hearing was set for May 20, 2021.

[3]  THC (tetrahydrocannabinol) is the active ingredient in marijuana. (*In re I.G.* (2014) 226 Cal.App.4th 380, 383.)

[4]  The juvenile court later found G.S., whose whereabouts were unknown, to be the child's alleged father.

3

address.  The social worker informed mother that she was at that address and the residents told her mother did not live there. Mother ended the call and did not answer either of the social worker's two subsequent calls.

On February 11, 2021, the social worker spoke with maternal great-grandmother M.T.  Maternal great-grandmother did not know mother's or the child's whereabouts.  Maternal great-grandmother had custody of and was in the process of adopting half-sibling S.E. and was willing to take custody of the child.

Also on February 11, 2021, the social worker spoke with a social worker at California Hospital Medical Center.  The hospital social worker stated that mother said she stopped consuming marijuana when she was three months pregnant with the child.  Asked about the child's THC levels, the hospital social worker explained that the test only registered positive or negative and did not give levels.  Mother was not drug tested, but "was positive for fentanyl due to labor."

In a series of e-mails on February 18, 2021, mother responded to a Department email that stated it had unsuccessfully attempted to contact her and requested she contact the Department.  In her e-mails, mother asked about the nature of the Department's inquiry.  Mother did not respond to the Department's request that she make herself available to the Department.

On February 24, 2021, the social worker received information that a family member informed maternal great-grandmother that mother might be in Chicago.

At the March 2, 2021, detention hearing, the juvenile court found a prima facie case for detaining the child and ordered the

4

child placed with the Department. The court ordered the Department to file a missing persons report to locate mother and the child who were at large.

On March 15, 2021, the juvenile court issued a protective custody warrant for the child. On April 8, 2021, the court issued an arrest warrant for mother.

In its Jurisdiction/Disposition Report filed on March 26, 2021, the Department stated that the child remained at large with mother. According to a dependency investigator who contacted maternal grandfather S.E. on March 24, 2021, mother had been in Chicago because maternal grandmother C.J. told mother they were moving to Chicago and there was nothing mother could do about it. Maternal grandmother was on drugs and she and mother ended up homeless.

Maternal grandfather invited mother to live with him in Nevada. He told the dependency investigator that mother was in Nevada, but not living with him because she was concerned the Department would locate her and detain the child.

The dependency investigator advised maternal grandfather of the warrants for the child and mother and stated it was in mother's best interest to contact the Department. Further, mother's contact should be by phone and not by e-mail.

Later that day, mother called the dependency investigator. She stated she was aware the child tested positive for THC at birth. Mother had been prescribed medical marijuana because of pain she experienced while pregnant but stopped using marijuana when she was five months pregnant and no longer in pain.

Mother declined to provide her address, but stated she was living in Las Vegas. The dependency investigator advised mother

5

of the warrants for her and the child and explained the warrants could not be recalled until the Department saw the child in person.  Mother responded that she would meet with the Department in Los Angeles on March 29 or 30, 2021.

In a Last Minute Information for the Court filed on April 16, 2021, the Department reported that mother informed it on April 13, 2021, that she and the child were living in Las Vegas with paternal great-grandmother H.N.  The Department contacted Las Vegas Child Protective Services and provided it with copies of the protective custody warrant for the child and arrest warrant for mother.  Las Vegas Child Protective Services detained the child and arranged for the Department to take him into custody.

At a detention hearing on April 19, 2021, the juvenile court ordered the child detained from mother, who continued to reside in Las Vegas, and alleged father.  It also ordered the Department to assess the possibility of resolving the matter with informal supervision—i.e., without adjudicating the child a dependent of the court—pursuant section 301 or 360, subdivision (b); to provide mother with visitation; to work with Nevada authorities to assess mother's home; and to have mother drug test.

In a Last Minute Information for the Court filed on April 20, 2021, the Department reported the child was placed with maternal great-grandmother.

In a Last Minute Information for the Court filed on May 12, 2021, the Department reported that informal supervision was not appropriate because mother failed to surrender the child or inform the Department of her whereabouts since her initial contact with the Department on January 27, 2021.  Thereafter, mother evaded the Department even though it informed her

6

multiple times that it needed to assess the child's health and safety in person and informed her of the protective custody warrant and arrest warrant. The Department further reported that mother failed to comply with the telephone visitation schedule for speaking to the child and stated she would continue to call whenever she wanted. The Department concluded that mother was a flight risk and would not comply with the Department if the court did not take jurisdiction over the child.

In a Last Minute Information for the Court filed on May 26, 2021, the Department reiterated its concerns about mother and the child's safety. On May 25, 2021, the Department asked mother for updates on her programs and testing. Mother reported that she took a drug/alcohol test in Las Vegas and provided the results to her attorney. She did not provide the results to the Department as requested. Mother did not communicate directly with the Department and continued to be evasive. The Department was unable to assess mother's sobriety and ability to care for the child because it was unable to speak with her in person—she communicated with the Department primarily through e-mail and not by telephone.

At the May 26, 2021, jurisdiction/disposition hearing, mother testified she knew the child tested positive at birth for marijuana. She admitted she smoked marijuana three to four times a week while pregnant with the child, but stated she stopped when she learned she was pregnant at three months. She denied ever having taken any other drugs such as heroin or methamphetamine.

After the child's birth, mother resumed smoking marijuana three to four times a week for her diagnosed depression and diagnosed postpartum depression—she was prescribed marijuana

7

in 2017 for depression.  Maternal grandfather, maternal great-grandmother, and maternal great-aunt T.W. were responsible for caring for the child when mother used marijuana.  Mother's marijuana use never negatively affected her ability to function throughout the day.  At the time of the hearing, mother was no longer smoking marijuana, having stopped on April 14, 2021.

Mother had learned about the Department's "involvement" with the child from maternal grandmother around early February 2021.  Mother had "reached out" to a social worker, contacting her by e-mail and then speaking with her on the telephone.  Mother gave the social worker her address and telephone number and had been in regular contact with the social worker since then.  Mother did not recall having a telephone conversation with a social worker on January 27, 2021.  Around mid-January 2021, she last had access to the e-mail address the Department purportedly used to communicate with her in February 2021.  Maternal grandmother had access to that e-mail address and mother's phone.

The referral address for mother was her address when she first moved to Los Angeles.  When the child was born, mother was not living there, and she did not give that address to anyone at the hospital or to the social worker.  She had, however, given that address to the social worker in half-sibling S.E.'s case.

Mother had physical custody of the child for about three months after he was born.  During that time, the child did not suffer any injuries and was never ill.  Mother had "scheduled" medical insurance for the child and had scheduled a doctor's appointment for him, but he was removed from mother before the appointment.

The juvenile court sustained the section 300 petition as set forth above, declared the child a dependent of the court, and removed him from mother's custody. The court found mother's testimony about her drug use "not entirely credible"—she testified that she stopped smoking marijuana when she was three months pregnant but also told a social worker she stopped when she was five months pregnant. The court found mother's testimony about maternal grandmother's access to mother's phone and e-mail account "questionable and not entirely believable."

The juvenile court also noted that mother had failed to drug test and had a criminal history of battery which pointed to her failure to follow court orders. "[M]ost importantly, her prior welfare history and her hiding the child from the Department all preponderate[d] to the conclusion that she ha[d] an unsettled substance abuse problem . . . ."

The juvenile court ordered monitored visitation for mother a minimum of four times a week for 30 minutes. If mother visited California, the court authorized in person visits for three hours. The court further ordered six random or on demand drug tests. If mother missed a test or tested positive, then mother was to participate in a full drug rehabilitation program with random testing. Finally, the court ordered mother to participate in a developmentally appropriate parenting course and individual counseling to address case issues.

# III.   DISCUSSION

## A.   *Jurisdiction*

Mother contends that insufficient evidence supports the juvenile court's jurisdiction order.  We disagree.

"'In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them.  [Citation.]  In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.'"  (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

For a child to be found a dependent of the juvenile court under section 300, subdivision (b)(1), the court must find:  "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child . . . , or by the inability of the parent or guardian to provide regular care for the child due to the parent's . . . substance abuse."

Drug use alone is insufficient to show that a child is at a substantial risk of serious physical harm or illness.  (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1046; *In re Drake M.* (2012) 211 Cal.App.4th 754, 764; *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 453.)  A parent's substance use may support a finding of jurisdiction if

10

such use satisfies the statutory standard of a substantial risk of serious physical harm. (§ 300, subd. (b)(1)(D).)

Substantial evidence supports the juvenile court's jurisdiction finding. Mother abused marijuana during her pregnancy with the child's half-sibling S.E. resulting in S.E. being declared a juvenile court dependent. Mother's substance abuse, which she has not since addressed, was sufficiently significant that S.E. was receiving permanent placement services.

Mother received poor prenatal care when pregnant with the child, who was less than five months old at the time of the jurisdiction hearing. And, after the child was born, mother took steps to evade the Department, thus thwarting its efforts to assess the child's health and safety in person. Mother gave the Department a false referral address, reaffirming that false address in a phone call as a social worker stood outside mother's claimed residence. Despite repeated requests, mother did not make herself available to the Department and moved outside the Department's jurisdiction, first to Chicago and then to Nevada. According to maternal grandfather, when mother moved to Nevada, she did not live with him because she was concerned the Department would locate her and detain the child. When mother contacted the Department from Nevada, she declined to provide her address. Informed of the warrants for her and the child, mother stated she would meet with the Department at the end of March 2021 but did not appear for the meeting.

Other evidence supported the juvenile court's conclusion that mother had an unsettled substance abuse problem. Mother admitted smoking marijuana during the two-year period prior to her pregnancy with the child, claiming she stopped when she

11

learned she was pregnant, yet the child tested positive for THC at birth. Mother gave conflicting reports of when she stopped smoking marijuana during her pregnancy with the child, claiming at various times that she stopped at month three and at month five. Mother admitted resuming her marijuana use after the child's birth even though her prior marijuana abuse resulted in the dependency case for the child's half-sibling S.E. and the current dependency case for the child.

B.    *Disposition*

Mother contends that, even if the facts supported an assertion of jurisdiction over the child, there was insufficient evidence to support the juvenile court's disposition orders removing the child from her physical custody, the order for monitored visitation, and the failure to order informal supervision. The court erred in ordering the child removed from mother's custody; but it did not abuse its discretion in failing to order informal supervision.[5]

1.    <u>Removal</u>

"""In dependency proceedings[,] the burden of proof is substantially greater at the dispositional phase than it is at the jurisdictional phase if the minor is to be removed from his or her home'" or the physical custody of a parent. [Citation.] The applicable statute, section 361, subdivision (c), "'is clear and

---

[5]    Because we hold the juvenile court erred in removing the child from mother's custody, we do not reach mother's contention concerning the visitation order.

12

specific:  Even though children may be dependents of the juvenile court, they shall not be removed . . . unless there is clear and convincing evidence of a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being *and* there are no 'reasonable means' by which the child can be protected without removal.'" [Citations.]  [¶]  . . .  [¶]

"'On appeal from a dispositional order removing a child from a parent we apply the substantial evidence standard of review, keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence.' ([*In re*] *Ashly F.* [(2014)] 225 Cal.App.4th [803,] 809; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005 . . . ['when presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof'].)"  (*In re I.R.* (2021) 61 Cal.App.5th 510, 520.)

Although substantial evidence supports the juvenile court's jurisdiction order, substantial evidence does not support its removal order.  That is, there is not clear and convincing evidence that the child would be in substantial danger if allowed to remain in mother's physical custody.  (§ 361, subd. (c)(1); *In re I.R., supra*, 61 Cal.App.5th at p. 520.)  Instead, the evidence shows mother's relatives—maternal grandfather, maternal great-grandmother, and maternal great-aunt T.W.—assisted mother in caring for the child and the child had not suffered any injuries and was not ill in the months after birth and prior to the disposition hearing.  Also, mother had "scheduled" medical

13

insurance for the child and had scheduled a doctor's appointment for him (which he did not attend because he was removed from mother before the appointment).

## 2.    Informal Supervision

Section 360, subdivision (b) provides:  "If the court finds that the child is a person described by [s]ection 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent or guardian under the supervision of the social worker for a time period consistent with [s]ection 301."  A court may order informal supervision if the child is placed in the home, and the family is cooperative and agrees to informal services without court supervision.  (*In re Adam D.* (2010) 183 Cal.App.4th 1250, 1259.)  "'If the court agrees to or orders a program of informal supervision, it does not dismiss the dependency petition or otherwise set it aside.  The true finding of jurisdiction remains.  It is only the dispositional alternative of declaring the child a dependent that is not made.'"  (*Id.* at p. 1260.)  The juvenile court's denial of a request for informal supervision is reviewed for an abuse of discretion.  (*In re N.M.* (2011) 197 Cal.App.4th 159, 171.)

The juvenile court did not abuse its discretion in failing to order informal supervision.  Mother's evasion from contact with the Department demonstrates her unsuitability for informal supervision.

14

## IV.  DISPOSITION

The jurisdiction order is affirmed.  The removal order is reversed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM, J.


We concur:


BAKER, Acting P. J.


MOOR, J.

15